UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

**Case No. 2:04-CR-173**
**JUDGE EDMUND A. SARGUS, JR.**

**HARRY H. JONES,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Harry H. Jones's Amended Motion to Dismiss the Indictment Due to a Violation of the Sixth Amendment Right to a Speedy Trial (Doc. 30). This Court held a hearing on the Defendant's motion on April 20, 2012. For the reasons that follow, the Defendant's motion is **DENIED**.

## I. BACKGROUND

Defendant Harry H. Jones ("Jones") was indicted on October 14, 2004 on one count of filing a false federal tax return for tax year 1997 in violation of 26 U.S.C. § 7206(1), and two counts of failing to file federal tax returns for tax years 1998 and 1999 respectively, in violation of 26 U.S.C. § 7203. Jones was not arrested until October 29, 2010 upon his re-entry from Canada into the United States when a United States border agent identified his information, which had been posted with the National Crime Information Center ("NCIC"). According to the affidavit of Supervisory Deputy U.S. Marshal Andrew Shadwick ("Shadwick"), the warrant information pertaining to Jones had been continuously posted with the NCIC since February 28,

2005. (Doc. 33-1 at ¶ 3.) In his affidavit, Jones avers that he had no knowledge of the October 14, 2004 indictment until November 1, 2010, when he was shown an arrest warrant for the first time. (Doc. 30-2 at ¶¶ 3–4, 7.)

On November 4, 2010, an identity and bond hearing was held in the United States District Court for the Western District of New York in Buffalo, New York, after which Jones was held on a $5,000 bond. (Doc. 30-2 at 6.) Jones was subsequently committed to the United States District Court for the Southern District of Ohio on November 9, 2010. (Doc. 30-2 at 6–7.) An arraignment and bond hearing was held in this Court on November 24, 2010. On December 30, 2010, Jones filed a Motion to Dismiss the Indictment Due to a Violation of the Sixth Amendment Right to a Speedy Trial (Doc. 18). Jones filed an Amended Motion to Dismiss the Indictment Due to a Violation of the Sixth Amendment Right to a Speedy Trial (Doc. 30) on September 30, 2011 and a Supplement to the Amended Motion (Doc. 31) on January 30, 2012 to include additional information since the original motion was filed in December 2010. The Government filed its Memorandum Contra (Doc. 33) on February 10, 2012, per the Court's January 31, 2012 Order (Doc. 32). Jones sought permission to file a Reply (Doc. 39), which was granted and filed thereafter on March 2, 2012.

Jones contends that the six-year lapse of time from the indictment on October 14, 2004 to the date of his arrest on October 29, 2010 constitutes a violation of his Sixth Amendment right to a speedy trial, thereby requiring dismissal of the indictment, because "no action of any kind by any government agency or officer was taken until November 1, 2010." (Doc. 30 at 2.) The Government's position is that it did not know where Jones was located during that period of time and had no information as to his whereabouts. (Doc. 33 at 7.)

## II. DISCUSSION

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." U.S. Const. amend. VI. In *Barker v. Wingo*, the Supreme Court set forth a four-factor balancing test in determining whether a particular defendant has been deprived of his right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. 407 U.S. 514, 530 (1972). The Court will address each of these factors in turn.

### 1. Length of Delay

The first factor to consider is the length of the delay, which "is to some extent a triggering mechanism." *Barker*, 407 U.S. at 530. Unless there is some delay that is presumptively prejudicial, "there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon peculiar circumstances of the case." *Id.* at 530–31.

Jones's primary contention is that the length of delay between the indictment and his arrest—six years—was uncommonly long and thus presumptively prejudicial. Jones relies heavily on *Doggett v. United States* to support his contention that the six-year delay in his case is presumptively prejudicial, a case in which the Supreme Court held that the eight-and-a-half-year delay between the defendant's indictment and arrest violated the defendant's right to a speedy trial,. 505 U.S. 647 (1992). In *Doggett*, the Court stated that "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial.'" 505 U.S. at 651–52.

3

*Doggett* is distinguishable from the instant case for several reasons. The first is the length of the delay. The delay found to be prejudicial in *Doggett* was eight-and-a-half years; the delay in the instant case is six years. The delay in *Barker*, where the Court did not find a speedy trial right violation, was five years. More significantly, however, the reasons for the delay in *Doggett* were remarkably different from the reasons expressed in the instant case, which will be further discussed below. In *Doggett*, the Court found that the Government's "egregious persistence in failing to prosecute" the defendant due to the Government's "inexcusable oversights" was clearly sufficient to entitle the defendant to relief. 505 U.S. at 657–78. In the instant case, it is undisputed that there was no deliberate attempt by the Government to delay the trial as a tactical measure.

Nevertheless, the Court finds that it is unnecessary to decide whether the length of the six-year delay is presumptively prejudicial because a balance of the remaining *Barker* factors does not indicate that Jones has been deprived of his right to a speedy trial.

## 2. Reason for Delay

The second factor to consider is the reason the Government assigns to justify the delay. The *Barker* Court held that "different weights should be assigned to different reasons." 407 U.S. at 531. For example:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

4

*Id.* Here, both parties agree that there was no deliberate attempt by the Government to delay the trial as a tactical measure. Jones, however, contends that the Government is "more to blame for the delay" because during the six-year time period there were several "factors that should have alerted the government as to Jones'[s] whereabouts." (Doc. 30 at 4.) In his motion, Jones lists seven examples of instances that should have revealed an outstanding arrest warrant, such as him possessing a valid driver's license, being stopped and ticketed for at least one traffic violation, renewing his passport in 2009, flying on several airlines, maintaining his CPA license, having an insurance license issued, and regularly receiving VA medical benefits. (Doc. 30 at 4–5.) Jones contends that the Government did not exhibit reasonable diligence in attempting to discover his whereabouts from the time of the indictment until the date of his arrest. (Doc. 39 at 3.)

The Government maintains that it did not know where Jones was located after 1999 and had no information as to his whereabouts. In his affidavit, Supervisory Deputy United States Marshal Shadwick avers that the records of the United States Marshal Service showed that no information had been provided as to a likely location of Jones until his arrest. (Doc. 33-1 at ¶ 3.) In its Memorandum Contra, the Government admits that "although it is clear that the government does bear some responsibility for the delay, it is apparent that the authorities did not know where to look for Defendant Jones and essentially relied upon the NCIC posting for his ultimate capture, which did occur." (Doc. 33 at 8.)

With respect to the reason for the delay, the Court does not find (nor does Jones allege) any bad faith on the part of the Government. More importantly, the Court does not find that the Government failed to use reasonable diligence to discover Jones's whereabouts from the time of the indictment until the date of his arrest. While Jones contends that the Government did not diligently search for him, the inquiry is whether the Government exercised reasonable diligence,

5

and the Court cannot say that the Government did not act reasonably. According to the Government, authorities had no information as to his whereabouts and essentially relied upon the NCIC posting for his capture. Upon return of the indictment, an arrest warrant was filed on October 18, 2004, the warrant information was posted with the NCIC on February 28, 2005, and was continuously listed until Jones's arrest—which was undisputedly based on the NCIC posting—on October 29, 2010. (Doc. 33 at 7; Doc. 33-1 at ¶ 3.) Therefore, while the reason for delay is considered in evaluating whether Jones has been deprived of his right to a speedy trial, the Court finds that this factor neither weighs in favor nor against either party.

### 3. Defendant's Assertion of His Right

The third factor to consider is the defendant's responsibility to assert his right to a speedy trial under the Sixth Amendment. Jones asserted his right to a speedy trial on December 30, 2010 after his arrest on October 29, 2010. In his affidavit, Jones avers that he had no knowledge of the October 14, 2004 indictment until November 1, 2010, when he was shown an arrest warrant for the first time. (Doc. 30-2 at ¶¶ 3–4, 7.) At the April 20, 2012 hearing, the Government indicated that it did not dispute Jones's claim that he did not know of the indictment until after his arrest. Because Jones "is not to be taxed for invoking his speedy trial right only after his arrest," the Court finds that this factor neither weighs in favor nor against either party. *See Doggett*, 505 U.S. at 654–55.

### 4. Prejudice to the Defendant

The fourth and final factor to consider is prejudice to the defendant, which "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 531. The *Barker* Court identified three such interests: (1) to

6

prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id.*

Here, Jones has not suffered from any oppressive pretrial incarceration since he has been on bond since the arraignment and bond hearing on November 24, 2010. Nor is there any indication that he has suffered from any unusual anxiety or concern due to the delay, particularly since he claims that he was unaware that he had been indicted until his arrest on October 29, 2010. The four continuances which Jones has sought and been granted also mitigate against any such claim.

With respect to the possibility that his defense has been impaired by the delay, Jones claims that his defense has been impaired because of the apparent loss or destruction of records of a reconciliation of Jones's trust account. Jones claims that these missing reconciliation records are vital for the purpose of determining what income was attributable to him, and the lack of the records denies him the right to defend himself. The Government maintains that the records have no real impact upon the evidence, and that "regardless of the passage of time, the evidence at any point was and is overwhelmingly against Defendant Jones." The Government further maintains that this case is primarily a financial records case, with expected testimony and related documents helping to explain those financial records, and therefore any potential problems that may arise due to delay are minimal. (Doc. 33 at 6.)

From the record before it, the Court cannot find that the unavailability of the records "has made it virtually impossible to prepare a defense," as Jones contends in his motion. (Doc. 30 at 13.) As discussed at the April 20, 2012 hearing, there is no contention that either party is at fault for the loss or destruction of the records at issue. Though Jones may experience some difficulty without the assistance of the missing records, this issue is merely attributable to the passage of

7

time, and the Court finds that a balance of the other *Barker* factors does not indicate that he has been deprived of his right to a speedy trial.

Most significantly, Jones's primary position is that *Doggett* relieves him of the burden of establishing prejudice because the delay was the result of the Government's negligence. Jones maintains that the six-year delay of no activity from the Government is presumptively prejudicial under *Doggett*. As indicated above, however, the record does not support a finding of negligence on the part of the Government, and certainly not a finding of bad faith, as there was in *Doggett*. The Court disagrees that *Doggett* is authority for Jones to bypass a showing of prejudice. The egregious circumstances in *Doggett* are simply not present here.

Balancing the conduct of the Government and the Defendant in light of these factors, the Court concludes that Jones's right to a speedy trial has not been violated under the Sixth Amendment.

### III. CONCLUSION

Based on the foregoing reasons, the Defendant's Amended Motion to Dismiss the Indictment Due to a Violation of the Sixth Amendment Right to a Speedy Trial (Doc. 30) is **DENIED**.

**IT IS SO ORDERED.**

5-3-2012
**DATED**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

8